RONALD E. RANDOLPH AND STELLA M. RANDOLPH,
PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 5119–78.     Filed May 15, 1980.

Ronald E. Randolph and Stella M. Randolph, pro se.
*William J. Falk,* for the respondent.

DRENNEN, *Judge:* Respondent determined the following deficiencies in petitioners' income tax:

| | |
|---|---|
| 1974 | $481 |
| 1975 | 477 |
| 1976 | 561 |

After concessions, the issues remaining for decision are:

(1) Whether petitioners are liable for the tax on their self-employment income under the provisions of sections 1401 and 1402, I.R.C. 1954;[1] and

(2) Whether petitioners are entitled to a deduction for automobile expenses in excess of those allowed by respondent for the 1974 taxable year.

---

[1] All section references are to the Internal Revenue Code of 1954, as amended and in effect in the years at issue, unless otherwise indicated.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts together with the exhibits attached thereto are incorporated herein by this reference.

Ronald E. Randolph (Ronald) and Stella M. Randolph (Stella), the petitioners herein, are husband and wife, and resided in Lowndes, Mo., at the time of the filing of the petition in this case. Petitioners timely filed joint Federal income tax returns for all taxable years in issue with the Internal Revenue Service Center, Kansas City, Mo.

Within the statutory period of limitations, a timely statutory notice of deficiency with respect to the taxable years 1974, 1975, and 1976 was mailed to petitioners at their last known address.

Petitioners are active members of the Seventh Day Adventist Church. Petitioners believe that any participation in the Social Security program is sinful and a denial of God. However, the General Conference of the Seventh Day Adventist Church, which sets the policies and determines the official position of the church, has taken no official position either for or against participation by members of the church in the Social Security program. Many ministers and members of the Seventh Day Adventist Church voluntarily pay self-employment tax on their earnings from self-employment. In fact, the Seventh Day Adventist Church, as an employer, pays the Social Security tax imposed upon employers to match the tax paid by their employees.

In April 1967, Ronald filed an application for exemption from tax on self-employment income on the ground that he: was, and since May of 1957 had continuously been, a member of the Seventh Day Adventist Church; adhered to the established tenets or teachings of that group; and by reason of such tenets, was conscientiously opposed to accepting the benefits of any private or public insurance which made payments in the event of death, disability, old age, or retirement. This application was disapproved by the District Director of Internal Revenue with a statement that, "the religious group in which you have membership does not meet the requirements of Section 1402(h)(1)(C) of the Internal Revenue Code." No other application for exemption from self-employment tax had been filed by Ronald as of December 31, 1976.

On April 26, 1966, a written determination was issued by the

Department of Health, Education, and Welfare, Social Security Administration, with respect to the Seventh Day Adventist Church. This determination was that, "The Seventh Day Adventist Church does not meet the requirements of section 1402(h)(1) of the Internal Revenue Code as a religious sect or division thereof whose members may, upon application, be exempt from the payment of Self-Employment Contributions Act taxes."

Ronald did not pay tax on his earnings from self-employment for the taxable year 1965. He petitioned this Court for determination of his liability for self-employment tax for that year. In that case, Ronald basically took two positions. He argued that (1) his application for exemption should have been granted as the tenets and teachings of his church are opposed to public insurance; and (2) regardless of the position of his church, he so interprets those tenets as being opposed to the Social Security program and, therefore, it was unconstitutional for him to be required to pay self-employment tax. A decision adverse to Ronald's position was filed December 29, 1969, captioned *Ronald E. Randolph v. Commissioner*, T.C. Memo. 1969–289. Stella was not a party to that action.

Ronald did not file with this Court either a motion for reconsideration of the opinion or findings therein or a motion to vacate, revise, or reverse the decision, nor did Ronald file an appeal of that decision with the United States Court of Appeals.

Ronald's religious beliefs did not undergo any substantive change between 1965, the tax year in issue in his first case before this Court, and the close of 1976, which is the last year at issue herein.

Petitioners did not pay tax on their self-employment income during the taxable years in issue.

By statutory notice mailed on February 28, 1978, respondent determined that petitioners were liable for self-employment tax with respect to the following amounts:

| | |
|---|---|
| 1974 | $4,937 |
| 1975 | 6,042 |
| 1976 | 7,095 |

In addition to the adjustment imposing self-employment tax upon petitioners' self-employment income, respondent made the

following adjustments to petitioners' taxable income for the 1974 taxable year.

| Item | Increase in taxable income |
|---|---|
| Cost of goods sold | $123 |
| Mileage | 416 |
| Insurance | 83 |
| Tax preparation | 26 |

Petitioners concede the correctness of the adjustments made with respect to costs of goods sold and insurance. Respondent concedes that the deduction claimed by petitioners for tax preparation should be allowed.

Petitioners had self-employment income in the amounts of $4,911 for the taxable year 1974,[2] $6,042 for the taxable year 1975, and $7,095 for the taxable year 1976.

OPINION

### Self-Employment Tax

Respondent has determined petitioners liable for the tax on self-employment income under the provisions of sections 1401 and 1402. Petitioners interpose a variety of constitutional objections to the imposition of this tax upon them. Before consideration of this case on its merits, we must decide what role, if any, the doctrine of collateral estoppel plays in this case.

By amended answer, respondent asserts that both Ronald and Stella are estopped to deny determinations upon issues presented and decided adversely to Ronald in *Randolph v. Commissioner*, T.C. Memo. 1969–289.

The doctrine of collateral estoppel provides that a decision on the merits in one suit prevents further litigation between the same parties of issues which were presented, litigated, and decided when the controlling facts and applicable legal rules

---

[2]The parties have stipulated that petitioners had self-employment income in the amount of $4,937 for the taxable year 1974. This amount was arrived at by adding the adjustments determined by respondent in the statutory notice to the amount reported by petitioners on their return. Only net earnings from self-employment are subject to tax. Secs. 1401 and 1402(a) and (b). In arriving at their stipulation, the parties did not consider the effect of respondent's concession which resulted in overstating self-employment income by $26. As the stipulation is not in conformance with respondent's concession, we have adjusted it accordingly. See *Jasionowski v. Commissioner*, 66 T.C. 312 (1976).

remained unchanged. *Stern & Stern Textiles, Inc. v. Commissioner*, 26 T.C. 1000, 1001 (1956), affd. 263 F.2d 538 (2d Cir. 1959), cert. denied 361 U.S. 831 (1959); *Commissioner v. Sunnen*, 333 U.S. 591 (1948).

However, this doctrine only precludes parties in the initial proceeding or a person in privity with that party from further litigating the facts and issues originally presented and decided. *Estate of Egan v. Commissioner*, 28 T.C. 998 (1957), affd. 260 F.2d 779 (8th Cir. 1958). In the instant case, Stella was not a party in the prior proceeding and collateral estoppel cannot apply to her. *Moore v. United States*, 360 F.2d 353 (4th Cir. 1965) (as modified); *Stone v. Commissioner*, 56 T.C. 213 (1971); *Rodney v. Commissioner*, 53 T.C. 287 (1969). Therefore, regardless of the applicability of this doctrine to Ronald, due process requires that Stella be accorded her day in court to contest respondent's determination. We therefore consider the merits of this case. *Moore v. United States, supra.*

Section 1401 imposes a tax on self-employment income as defined in section 1402(b). Section 1402(h)[3] provides an exemption from the tax for an individual who is a member of a recognized religious sect whose established tenets or teachings cause him to be conscientiously opposed to the acceptance of benefits of any private or public insurance which makes payments in the event of death, disability, old age, or retirement. The statute further provides that the exemption may be granted only if the Secretary of Health, Education, and Welfare finds such sect or division thereof has established teachings or tenets opposed to the acceptance of benefits from public and private insurance.

It is uncontroverted that the Secretary of Health, Education, and Welfare has found that the Seventh Day Adventist Church, the religious sect to which petitioners belong, does not have such established teachings or tenets. This determination was based upon the official position of the governing body of the church. It is therefore evident that petitioners do not fall within the precise terms of the exemption granted by section 1402(h).

Petitioners initially contend, and, we note, with the utmost candor and sincerity, that the teachings or tenets of their faith,

---

[3]For taxable years after 1976, sec. 1402(h) has been redesignated as sec. 1402(g).

as they individually interpret them, prevent them from participating in, and benefiting from, the Social Security program. As such, the petitioners argue, the tax which the Government seeks to exact amount to a taking, without just compensation, in derogation of the Fifth Amendment. This argument is simply inapposite, as nonparticipation in a governmental program is simply not a basis upon which to find an unconstitutional taking.

The taking clause of the Fifth Amendment plays a very limited role in the field of taxation. In a sense, every tax levied results in what could commonly be considered a governmental taking of private property. The Constitution simply does not conflict with itself by conferring upon Congress on the one hand the "power to lay and collect taxes on incomes" while taking away this power on the other hand by the limitations of the taking clause of the Fifth Amendment. *Brushaber v. Union Pac. R.R.*, 240 U.S. 1, 24 (1916). To be sure, the Fifth Amendment requires judicial nullification of a statute which on its face is ostensibly a tax but in actuality amounts to a constitutionally impermissible taking of private property. See *Acker v. Commissioner*, 258 F. 2d 568, 574 (6th Cir. 1958), affd. on another issue 361 U.S. 87 (1959). The proper focus, however, is to determine whether the statute is so arbitrary as to constrain the conclusion that the statute is not an exaction of tax but a confiscation of property. *Steward Machine Co. v. Davis*, 301 U.S. 548, 585 (1937); *Brushaber v. Union Pac. R. R., supra; Acker v. Commissioner, supra.* One indication that the statute in question is not what it appears to be is a finding that the classifications that it draws are so unreasonable as to produce a gross and patent inequity. *Brushaber v. Union Pac. R. R., supra; Steward Machine Co. v. Davis, supra.*

We have no trouble finding that sections 1401 and 1402 are taxing statutes in substance as well as in name. The constitutionality of section 1401 was upheld as an additional income tax imposed upon income derived from self-employment. *Cain v. United States*, 211 F.2d 375 (5th Cir. 1954).[4] Various other aspects of the Social Security Act have survived constitutional challenges. *Helvering v. Davis*, 301 U.S. 619 (1937); *Steward Machine Co. v. Davis, supra.* It has additionally been held that

---

[4]See also *Krom v. Commissioner*, T.C. Memo. 1978–230; *Abrahamson v. Commissioner*, T.C. Memo. 1978–26.

the classification and exemptions drawn by sections 1401 and 1402 do not result in arbitrary or unreasonable discrimination. Citing the Supreme Court in *Carmichael v. Southern Coal Co.*, 301 U.S. 495, 509 (1937), this Court stated in *Henson v. Commissioner,* 66 T.C. 835, 840 (1976):

"It is inherent in the exercise of the power to tax that a state be free to select the subjects of taxation and to grant exemptions. * * * This Court has repeatedly held that inequalities which result from a singling out of one particular class for taxation or exemption; infringe no constitutional limitation. * * * "

Petitioners have pointed to no facts, and we can find none, which suggest the statute as written results in a gross discrimination equivalent to a confiscation prohibited by the taking clause of the Fifth Amendment.

It should also be noted that payment of self-employment tax does not give any taxpayer vested rights in the benefits of the program. The right to benefits accrues only when certain conditions are met. 42 U.S.C. sec. 402(e) through (i). Therefore, although petitioners will not participate in the program, this fact does not separate them from other taxpayers similarly situated and, hence, no latent discrimination results.

Accordingly, we find that the statute is not violative of the taking clause of the Fifth Amendment as written or applied to petitioners in this case.

Petitioners next challenge the statute as in contravention of the establishment of religion and free exercise thereof clauses of the First Amendment. This Court, in *Palmer v. Commissioner,* 52 T.C. 310 (1969), and *Henson v. Commissioner, supra,*[5] has considered similar arguments and has found them to be without merit. See also *Jaggard v. Commissioner,* 582 F.2d 1189 (8th Cir. 1978), affg. a Memorandum Opinion of this Court, cert. denied 440 U.S. 913 (1979). We can find nothing in the instant case to distinguish it from the above cases. Accordingly, we find the reasoning of those opinions to be dispositive of this issue.

Petitioners next contend that because only the General Conference of the Seventh Day Adventist Church was contacted by the Secretary of Health, Education, and Welfare, rather than

---

[5]See also *Stoffels v. Commissioner,* T.C. Memo. 1979-295; *Chapman v. Commissioner,* T.C. Memo. 1979-202; *Lerner v. Commissioner,* T.C. Memo. 1975-60; *Church v. Commissioner,* T.C. Memo. 1970-146.

all the members, individually, when determining qualification for exemption, they have been deprived of property without due process of law. This contention also has no merit. The exemptions directed by the statute have support in considerations of policy and practical convenience and cannot be condemned as arbitrary. *Henson v. Commissioner, supra;* cf. *Abney v. Campbell,* 206 F.2d 836 (5th Cir. 1953).

Nor can it be said that the Secretary of Health, Education, and Welfare acted in an arbitrary or unconstitutional manner when gathering information upon which to base his determination. In fact, when practical convenience is considered, we believe he acted in the most reasonable manner possible. Accordingly, we hold there has been no deprivation of property without due process of law within the meaning of the Fifth Amendment.

Lastly, petitioners argue that an individual with a belief that makes him conscientiously opposed to the acceptance of benefits of any such private or public insurance program should be granted an exemption under section 1402(h), even though opposition to such insurance is not an established tenet of the sect to which he belongs.

Section 1402(h)(1)(D) provides that an exemption may be granted only where the sect that opposes public benefits has made provisions for its dependent members which are reasonable in view of their general level of living. It is not the conscientious opposition to private or public benefits, alone, that qualifies for the exemption, but the additional fact that the sect has made provisions for its dependent members.

The provision that requires a sect to make provisions for dependent members was in keeping with the overall welfare purpose of the Social Security Act. Though petitioners may make sufficient arrangements for their retirement and may not call upon society for assistance, we cannot say that Congress was arbitrary in concluding that retirement arrangements should not solely be left to the planning of each individual. See *Palmer v. Commissioner, supra.*[6] It is therefore evident that even if we were to accept petitioners' contention, they would still not be entitled to an exemption under section 1402(h).

---

[6]See also *Owens v. Commissioner,* T.C. Memo. 1979-79.

Accordingly, we find that petitioners are liable for tax under section 1401 with respect to their self-employment income in the amounts of $4,911 for the taxable year 1974, $6,042 for the taxable year 1975, and $7,095 for the taxable year 1976. This finding makes it unnecessary to consider whether the doctrine of collateral estoppel applies to Ronald in this case.

### Mileage Deductions

On their joint Federal income tax return for the taxable year 1974, petitioners claimed deductions for business mileage in the amount of $2,755. Respondent has allowed as a deduction all but $416 of the amount claimed. It is respondent's position that the amount disallowed constitutes commuting expenses, nondeductible under section 262.

Expenses incurred in commuting from one's home to one's place of employment are personal expenses and are not deductible. *Commissioner v. Flowers,* 326 U.S. 465 (1946). The burden of proving entitlement to deductions claimed is on petitioners. *Welch v. Helvering,* 290 U.S. 111 (1933). Rule 142(a), Tax Court Rules of Practice and Procedure.

Petitioners have presented no evidence to dispute respondent's determination; in fact, they concede that some amounts claimed as a deduction represent costs incurred in traveling between home and their place of employment. They argue, however, that the agent who audited their returns for the years in issue represented to them that all their mileage for 1978 was deductible. They reason that if that was the case for 1978, it must also be true for 1974.

Initially, although this is by no means clear from the record, it appears that petitioner's principal place of business was outside his home during 1974, while in 1978, petitioner worked from his residence. If this be true, then the agent's representations with regard to the year 1978 might have been correct. See *Curphey v. Commissioner,* 73 T.C. 766 (1980). But in any event, respondent is not estopped from challenging petitioners' claimed deductions due to inconsistent action by his agents. *Automobile Club v. Commissioner,* 353 U.S. 180 (1957).

Accordingly, petitioners are not entitled to a deduction for mileage in excess of that allowed by respondent.

*Decision will be entered under Rule 155.*