ROBERT LAWRENCE WOLF, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, RespondentWolf v. CommissionerDocket No. 1479-78United States Tax CourtT.C. Memo 1982-677; 1982 Tax Ct. Memo LEXIS 76; 45 T.C.M. (CCH) 174; T.C.M. (RIA) 82677; November 22, 1982. Harry Kresky, for the petitioner at trial. John E. Becker, Jr., for the respondent. COHENMEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge:* Respondent determined deficiencies in petitioner's Federal income taxes of $18,082.60 for the year 1966; $11,681.96 for the year 1967; $30,393.95 for the year 1968; and $25,546.38 for the year 1969. As to each year respondent also determined a 50 percent addition to tax under section 6653(b).1After concessions by the parties, the issues remaining for decision are: (1) Whether certain deposits to petitioner's bank and brokerage accounts in 1967, 1968, and 1969 constituted unreported income; (2) whether certain checks bearing 1969 dates deposited in petitioner's bank accounts*78 in 1970 constituted unreported income in 1969; (3) whether petitioner was entitled to deduct certain Schedule C expenses claimed for the year 1966; and (4) whether imperfections in respondent's methodology vitiated respondent's determination of petitioner's taxable income. FINDINGS OF FACT Some of the facts are found according to stipulation of the parties, which stipulation is incorporated here by this reference. At the time he filed his petition in this case, petitioner was a resident of Danbury, Connecticut. During the years 1966 to 1969, inclusive, petitioner derived income from the practice of medicine that was not reported on his income tax returns for those years. On November 27, 1973, a jury found petitioner guilty on eight counts of an indictment charging him with violations of sections 7201 and 7206(1) for each of the years 1966 to 1969, inclusive. Petitioner agrees that he is precluded, under the doctrine of collateral estoppel, from denying in this case that he willfully filed false and fraudulent income tax returns for the subject years with intent to evade and defeat a part of his income tax due and owing for those years; that there are underpayments of*79 income taxes for those years due to fraud; and that he is liable for the additions to the taxes for those years under the provisions of section 6653(b). In preparing the statutory notice of deficiency issued with respect to the subject years, respondent employed the bank deposits method of reconstructing petitioner's income. In determining the amount of the deficiency, respondent included all unexplained deposits not traceable to any nontaxable source, excluding certain cash transfers described below. During the years 1966 through 1969, petitioner maintained a checking account with the Chemical Bank New York Trust Company (Chemical Bank). During 1966 petitioner deposited into that account $50,124.44 in checks and $3,000 in cash. To arrive at the unreported income figure for that year set forth in the statutory notice of deficiency, respondent eliminated the $3,000 cash deposit as a transfer because on the same date as the deposit that same amount had been withdrawn from a savings account maintained by petitioner. During the year 1967, petitioner deposited in the Chemical Bank checking account $51,411.63, of which $15,133.60 was cash and $36,278.03 was checks. To arrive*80 at the unreported income figure set forth in the statutory notice of deficiency for 1967, respondent eliminated $250 as a transfer of funds withdrawn from an account maintained by petitioner at another bank; $500 withdrawn from a brokerage account maintained by petitioner with Eastman Dillon, Union Securities & Co. (Eastman Dillon); and $15,133.60 withdrawn from petitioner's savings account at Chemical Bank in 15 transactions. Each of the items eliminated as transfers were deposits occurring on the same date as the withdrawals. During 1968, petitioner deposited in the Chemical Bank checking account $39,827.61 in checks. To arrive at the unreported income figure for 1968 set forth in the statutory notice of deficiency, respondent eliminated deposits of $176.95 as refund items; $300 as a loan exchange; and $7,231.65 received by petitioner as compensation from Mt. Sinai Hospital and reported as income on his 1968 tax return as originally filed. During 1969, petitioner deposited in the Chemical Bank checking account $45,449.33, of which $25 was cash and $45,424.33 was checks. To arrive at the unreported income figure for 1969 set forth in the statutory notice of deficiency, respondent*81 eliminated a $6 credit memo item and the sum of $5,320.78 received as compensation to petitioner from Mt. Sinai Hospital and reported as income on his 1969 tax return as originally filed. In addition, prior to trial, respondent conceded that the $25 cash deposit should be eliminated as nontaxable. During the years 1966 and 1967, petitioner maintained a savings account with the Chemical Bank. The total deposits to that account during 1966 were $20,783.30, all of which were made in checks. To arrive at the unreported income figure for 1966 set forth in the statutory notice of deficiency, respondent eliminated as transfers from petitioner's checking account four items totaling $12,500 deposited on the same date as withdrawals in the same amounts from his Chemical Bank checking account, and the sum of $1,392.64 representing compensation to petitioner from Mt. Sinai Hospital that had been reported as income on his 1966 tax return. During 1967, total deposits to the account were $8,016.17, all of which were made in checks. To arrive at the unreported income figure for 1967 set forth in the statutory notice of deficiency, respondent eliminted the sum of $3,996.78, representing compensation*82 to petitioner from Mt. Sinai Hospital that had been reported as income on his 1967 tax return. During the years 1966 and 1967 petitioner maintained a savings account with Bankers Trust Company. During 1966 petitioner deposited the sum of $2,331.60 in checks, all of which was determined to be unreported income. Total deposits to that account during 1967 were $5,918.45, all of which were made in checks. To arrive at the unreported income figure for 1967 set forth in the statutory notice of deficiency, respondent eliminated the sum of $733.43 representing compensation to petitioner from Mt. Sinai Hospital that had been reported as income on his 1967 tax return. During 1968, 1969, and 1970, petitioner maintained a checking account with Barclay's Bank. During 1968, total deposits to that account were $45,433.03, of which $41,275 was made in cash (in one deposit) and $4,158.03 was made in checks. To arrive at the unreported income figure for 1968 set forth in the statutory notice of deficiency, respondent eliminated four checks that had been returned to petitioner by Eastman Dillon, marked unpaid. During 1969, petitioner deposited into the Barclay's Bank account the sum of $139,147.66, *83 of which $115,985 was cash and $23,162.66 was checks. To arrive at the unreported income figure for 1969 set forth in the statutory notice, respondent eliminated the sum of $108,114.08, including $6.39 in refunds; a $44 "stale" unpaid check; $1,900 in travelers checks; and $343.25 representing compensation to petitioner from Mt. Sinai Hospital that had been reported as income on his 1969 tax return. The balance of the 1969 eliminations constituted withdrawals from petitioner's other bank accounts as follows: Date ofDate ofWithdrawalAmountDepositAmount1-20-69$ 5,000.001-22-69$ 5,000.005-12-69570.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,255.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,825.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,775.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,775.008-28-699,430.249- 9-6920,855.0010- 2-6930,285.245- 6-69500.005- 7-69500.008-20-69500.008-20-69500.009-23-696,935.0010- 2-696,935.00$105,820.44$105,820.44During the years 1967 and 1968, petitioner maintained a brokerage account with Goodbody and Company (Goodbody). Total deposits to that account during 1967 were $18,788.29. To arrive at the unreported income figure for 1967 set forth in the notice of deficiency, respondent*84 eliminated as transfers five items totaling $10,224.22 appearing on his Goodbody monthly statement within five days of the date of checks in the same amount drawn on petitioner's other accounts. 2 The amount of unreported income for 1968 set forth in the notice of deficiency included a Chemical Bank check in the sum of $681.70 deposited to the Goodbody account on May 22, 1968. On October 29, 1969, petitioner deposited into his account with Goodbody the sum of $2,213.75, which was not treated as income by respondent because the same amount had been withdrawn on October 28, 1969, from a bank account maintained by petitioner. During the years 1964 through 1969, petitioner withdrew from the various bank accounts maintained by him cash of at least $256,867.73 in at least 109 transactions. From those withdrawals, petitioner made four deposits amounting to $20,190.30 into his*85 brokerage account with Eastman Dillon, and the sum of $6,685.50 was deposited into an account with Purcell, Graham & Co.; none of these deposits were determined to be unreported income. Overall, 40 items totaling $172,746.30 were deposited into other accounts maintained by petitioner and were eliminated by respondent in determining unreported income for the years 1966 through 1969 as set forth above. The balance of cash, totaling $84,121.43, was not traceable into any of petitioner's accounts used by respondent in reconstructing petitioner's income. During 1966 petitioner received two checks totaling $383.20, which were not deposited into any of petitioner's checking accounts until 1967. During December 1967, petitioner received 10 checks, representing taxable income in the sum of $815, which were not deposited into any of petitioner's accounts until January 1968. During December 1968, petitioner received six checks representing taxable income in the sum of $864.80, which checks were not deposited into any of petitioner's bank accounts until January 1969. Also during 1968, petitioner received a check representing taxable income in the sum of $80, which check was not deposited*86 into any of petitioner's bank accounts until 1970. During 1969 petitioner received 66 checks representing taxable income in the total sum of $7,254.23, which checks were deposited into petitioner's bank account in January 1970 and were not reported on petitioner's 1969 tax return. Respondent included the said amounts as unreported income for 1969 set forth in the statutory notice of deficiency. On Schedule C of his tax return for 1966, petitioner claimed deductions for various items, which were allowed by respondent to the extent to which petitioner produced canceled checks and were disallowed to the extent not evidenced by canceled checks as follows: AmountAmountAmountItemClaimedof ChecksDisallowedIndependent contractor/steno$4,179.30$3,990.00$ 189,30Telephone expenses382.28282.4999.79Drugs and supplies1,489.301,135.93353.37Office maintenance743.41743.41Repairs expense1,293.42301.50991.92$8,087.71$5,709.92$2,377.79Petitioner has no records to support the claimed expenditures beyond the amount allowed by respondent. Prior to trial of this case, petitioner entered into a stipulation in which*87 he conceded that he was not entitled to deduct the difference between the amounts claimed and the amounts established by production of canceled checks. During the years 1966 through 1969, petitioner received cash or cashed checks representing taxable income totaling $5,258.20, which was not deposited to any of his bank accounts. During said years, petitioner made substantial cash expenditures, including, but not limited to, payments for support of his mother and about $40,000 in gambling losses. OPINION As petitioner has conceded, he is collaterally estopped by his criminal conviction from denying that there were underpayments of income taxes for the years 1966 through 1969. The remaining questions deal with the amount of unreported income, and the burden of showing that the determination of respondent is incorrect is on petitioner.Rule 142(a). As stated in Jones v. Commissioner,29 T.C. 601, 613-614 (1957): Where, as here, a taxpayer has made numerous and comparatively large deposits in a bank account, the sources and nature of which are not recorded or accounted for in any books of account, the Commissioner's determination of income and of deficiencies*88 in tax thereon by reference to such deposits has been approved in numerous cases. It is, of course, true that the existence of bank deposits, although not explained or accounted for in a satisfactory manner, does not of itself show that the sums deposited were or were not income. But where the Commissioner has determined that they were, the taxpayer has the burden of showing that the determination was wrong. Goe v. Commissioner,198 F.2d 851, certiorari denied 344 U.S. 897; Halle v. Commissioner,175 F.2d 500; Hague Estate v. Commissioner,132 F.2d 775, certiorari denied 318 U.S. 787, affirming 45 B.T.A. 104; Hoefle v. Commissioner,114 F.2d 713; Mauch v. Commissioner,113 F.2d 555; Herman J. Romer,supra; and Joseph L. Calafato,42 B.T.A. 881, affirmed per curiam 124 F.2d 187. See also Estate of Mason v. Commissioner,64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977). Petitioner has not produced records that would support his attack on respondent's determination, but has relied*89 on his own testimony and, in the briefs, on attacking specific parts of respondent's methodology as a basis for rejecting the whole. We are not bound to accept his testimony as true even to the extent that it is uncontroverted. Evaluation of the credibility of petitioner includes consideration of whether his testimony is improbable, inconsistent with rational inferences from other evidence, and inconsistent with prior explanations offered by petitioner. See Fleischerv. Commissioner,403 F.2d 403 (2d Cir. 1968), affg. a Memorandum Opinion of this Court; Dougherty v. Commissioner,60 T.C. 917, 932-937 (1973). 3 Of course, the conviction itself may be considered in evaluating his credibility. See Rule 609(a)(2), Federal Rules of Evidence.As discussed in detail below, petitioner chose to rely on imperfections in respondent's approach (which, of course, were attributable to the absence of accurate records maintained*90 by petitioner) and failed to account for specific items or to explain his inability to do so. Petitioner has attempted to thrust on repondent the responsibility of "verifying" petitioner's assertions. We must conclude, however, that if available evidence supported petitioner's position, he would have produced it; the failure to produce the evidence justifies an inference that it does not exist or would be contrary to his position. Unfortunately for petitioner, these factors affect each issue in the case. Unreported IncomeAs set forth above, respondent initially determined petitioner's unreported income by cumulating deposits to petitioner's bank and brokerage accounts during the years 1966 through 1969. Respondent then eliminated from the totals specific deposits, both cash and check, that could be traced to withdrawals from other accounts maintained by petitioner. The deposits eliminated as transfers were almost always made on the same day or within a few days of withdrawals from other accounts in the same amount. The longest interval between withdrawal and redeposit in respondent's schedule of transfer items was the interval from August 28, 1969, to October 2, 1969, with*91 respect to an item of $9,430.24. Respondent declined to eliminate other cash deposits into petitioner's accounts on the basis that deposits that did not coincide in amount with a withdrawal within a few days before the deposit did not fit into a pattern established by petitioner. Petitioner contends that all cash deposits should be eliminated as transfers and presents an elaborate statistical analysis from which he argues that respondent's method is invalid because there is no statistical correlation between the number of days between withdrawal and deposit of the items treated as transfers by the Internal Revenue Service and the number of days between other withdrawals and deposits not treated as transfer items by respondent. According to petitioner, "In other words, there is no 'pattern.'" Petitioner correctly states that the total amount of cash withdrawn from various accounts and the number of cash withdrawals far exceeded the amount and number eliminated as transfers by respondent. 4 Petitioner claims that cash withdrawn by him during the years in question was hoarded and kept in a safety deposit box, to be redeposited only when the need arose.Petitioner explains that*92 the cash hoard was maintained because he was involved in a marital dispute and he "wanted to conserve as much money as possible for the upcoming legal battles and upbringing of my son." Petitioner's statisatical analysis, if at all material, should have been presented at trial in the form of expert testifmony, and the witness would be subject to cross-examination by respondent. See Rules 702 and 704, Federal Rules of Evidence; Rule 71(d)(2). As it is, respondent has been able to successfully show that petitioner made a multitude of errors in his attempt to present the statistical analysis and in the conclusions he draws from it. The analysis contains factual errors, invalid assumptions, and omission of material evidence that would change the conclusion. Petitioner's argument must be rejected because it is based on fallacious data. Petitioner has*93 not produced credible evidence, such as a record of visits to his safety deposit box from which he could specifically trace hoarded cash to deposits. The credibility of his general assertions that deposits were attributable to a cash hoard is seriously eroded by the factors stated above. The evidence that petitioner had various cash expenditures during the years in issue is inconclusive as to the amount of such expenditures. The evidence and reason, however, suggest that not all of the cash withdrawn from petitioner's accounts was thereafter available to be redeposited into other accounts. Petitioner has the burden of establishing the amount that was available from time to time from the alleged hoard and the deposits that were attributable to such cash. 5Petitioner argues that the sum of $5,258.20 received in cash and checks cashed should be eliminated from taxable income, even though he previously stipulated that the said amounts were not deposited into any bank account. Petitioner's*94 position is based upon the apparent exclusion of those sums from the amount treated as unreported income for criminal purposes. Because petitioner has conceded that the amounts were not deposited into any bank account, he cannot successfully argue that they should be considered to be a source of the otherwise unexplained cash deposits. In any event, different treatment of those amounts for criminal purposes is not controlling. The burden of proof in a criminal proceeding, viz., beyond a reasonable doubt and borne by the Government, is frequently a reason why the amounts used in a criminal prosecution differ from the amounts used in a civil proceeding, where the burden of proof is on the petitioner. Petitioner also quarrels with respondent's calculation of unreported income for 1969, claiming that the 66 checks, totaling $7,254.23, received in 1969 and deposited in 1970 were included in income reported for 1970 and not eliminated during an audit by respondent of petitioner's 1970 return. A cash basis taxpayer, such as petitioner, is taxable on income items received during a taxable year, even if they were erroneously included in income in the following year. The year 1970*95 is not before the Court in this case. 6Although petitioner insists that he did report the disputed items as income in 1970, he offered no evidence other than his self-serving statements at trial. He did not produce a retained copy of his 1970 tax return or the preparer's work papers to show how the 1969 checks appeared on that return as income as claimed. He did not call the preparer as a witness to testify that such checks were included as income on the 1970 return. Respondent, on the other hand, has argued that the items were not reported as income on the 1970 return because the preparer of the 1970 return, according to other evidence, did not know about the bank account into which the checks were ultimately deposited. We cannot conclude that the knowledge or lack of knowledge by the preparer of the bank account establishes whether the items were or were not included in petitioner's income reported for 1970. However, the failure of producing such evidence, if it were decisive of the issue (which it is not), operates against petitioner. *96 Disallowed DeductionsAs stated above, petitioner initially conceded that deductions not supported by canceled checks were not allowable. He now argues that the unsubstantiated amounts for 1966 should be allowed because respondent accepted similar amounts for the years 1967, 1968, and 1969. Petitioner's argument is without merit. Under an annual accounting system, a transaction must be accounted for on the basis of the facts applicable to the year in which the transaction occurs. There is no way of telling on this record whether allowance of deductions not in issue in this case was correct or incorrect. If respondent's determinations as to other years were incorrect, they apparently were to the advantage of petitioner and he is not entitled to abuse that advantage by unreasonably extending it to other years. If respondent's determination was correct as to the other years, the circumstances may well be different in 1966, and petitioner gains nothing by citing inconsistency without showing that it results in an error with respect to an item which is in issue. See Randolph v. Commissioner,74 T.C. 284, 292 (1980). Respondent's MethodologyAs explained*97 above with reference to specific items, respondent's methodology is reasonable and presumed correct. It need not be perfect, especially when the inability to establish precise amounts by documentary support is due to petitioner's failure to maintain records or to provide specific information demonstrating error. He has not shown any errors which have not previously been corrected by respondent's concessions. Petitioner exaggerates the imperfections and concludes that "all of the Respondent's contentions are suspect and the Court is petitioned to declare that no additional tax is due and to eliminate all penalties and interest." The self-assessment system does not operate as petitioner would have it. Petitioner had his first opportunity to correctly report his taxable income when he filed his returns. By stringent criminal standards, by his own admissions, and by civil presumptions, his failure to do so has been established. Respondent has employed a well-recognized, careful and reasonable method of filling the gap created by petitioner. If errors have occurred, they have been caused by petitioner and he has the obligation to provide the data necessary to clarify areas of uncertainty. *98 Instead, he has resorted to indirect, inapplicable and inaccurate syllogisms, which, under rules of law and rules of this Court, are no substitute for direct proof. He has fallen far short of convincing this Court that respondent's method is arbitrary or capricious and should be rejected. Ruling on MotionsRespondent filed a motion to strike certain portions of petitioner's briefs on the ground that they purported to present evidence that had not been stipulated or introduced at trial. Although respondent's argument is well taken, the objectionable materials have not influenced the Court in this case, and respondent is therefore not prejudiced. That motion will be denied. Petitioner filed a motion to strike portions of respondent's brief and a motion to dismiss, both of which asserted, in effect, that petitioner is right and respondent is wrong. Neither of petitioner's motions is in proper form. Both lack merit and each will therefore be denied. Because of the adjustments conceded by respondent, Decision will be entered under Rule 155.Footnotes*. By order of the Chief Judge, this case was reassigned from Judge Sheldon V. Ekman to Judge Mary Ann Cohen for disposition. ↩1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩2. One item in the sum of $3,271.51 was withdrawn from petitioner's Chemical Bank checking account and deposited in his Chemical Bank savings account on January 4, 1967; the same amount was then transferred to the Goodbody account. Thus this item was twice eliminated in determining unreported income.↩3. During the trial, respondent was able to demonstrate several areas of inconsistency between petitioner's statements in this Court and petitioner's testimony at the earlier criminal trial.↩4. The amount of money and number of items used by petitioner in his analysis are inconsistent with the stipulation and with the trial record. The conclusion we reach, however, is the same regardless of whether petitioner's numbers or the numbers set forth in the findings of fact are correct.↩5. See Pappas v. Commissioner,T.C. Memo. 1981-639; Chester v. Commissioner,T.C. Memo. 1967-50; Harris v. Commissioner,T.C. Memo. 1969-49↩.6. If in fact the items were incorrectly included in 1970 income, petitioner might be entitled to relief under sections 1311-1314.↩