T.C. Memo. 1995-543


UNITED STATES TAX COURT


ANTHONY AND LINDA WALTERS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11784-93.       Filed November 16, 1995.


<u>Gerard P. Martin</u> and <u>Paula M. Junghans</u>, for petitioners.

<u>Clare J. Brooks</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:  Respondent determined deficiencies in and additions to tax and a penalty with respect to petitioners' Federal income taxes as follows:

|  |  | Additions to Tax and Penalty | | |
| Year | Deficiency | Sec. 6653(b)(1) | Sec. 6663 | Sec. 6661 |
| 1987 | $10,832 | $8,124 | – | $2,708 |
| 1988 | 35,158 | 26,369 | – | 8,790 |
| 1989 | 37,450 | – | $28,088 | – |

The issues for decision are:

(1)  Whether petitioners had embezzlement income during taxable years 1987, 1988, and 1989.  We hold that they did not.

(2)  Whether the amount of petitioners' unreported income for taxable years 1987, 1988, and 1989 should be calculated using a formula advanced by respondent or a similar formula advanced by petitioners.  We hold that the amount of unreported income is to be calculated using the formula proposed by petitioners.

(3)  Whether petitioners are liable for additions to tax and the penalty for fraud under section 6653[1] for 1987 and 1988 and under section 6663 for 1989.  We hold that Anthony Walters is liable for the section 6653 addition to tax for taxable years 1987 and 1988 and the section 6663 penalty for taxable year 1989; Linda Walters is not liable for such additions or penalty.

(4)  Whether petitioners are liable for the addition to tax under section 6661 for a substantial understatement of income tax for taxable years 1987 and 1988.  We hold that they are to the extent stated herein.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.  The stipulation of facts and the attached exhibits are incorporated herein.  At the time the petition was filed,

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

petitioners resided in Baltimore, Maryland. Petitioners timely filed joint Federal income tax returns for taxable years 1987, 1988, and 1989. All references to petitioner are to Anthony Walters.

During the years at issue, petitioner and his brother, Carlton Walters (Carlton), were partners in a Maryland general partnership located in Baltimore County, Maryland. The partnership operated a store under the name of Fruitland Produce (Fruitland) and sold fresh produce and seafood to its customers. During the winter holiday season, Fruitland also sold Christmas trees.

Both petitioner and Carlton grew up in the produce business. At age 16, petitioner quit school in order to work in his father's produce store. Similarly, Carlton dropped out of school while in the 11th grade and began working in his father's produce store. In approximately 1968, petitioner formed Fruitland as a sole proprietorship. Sometime thereafter, petitioner and Carlton united and began operating Fruitland as an equal partnership. From its inception, the partnership has been based upon oral agreements and has always been operated on a cash basis. Early on, petitioner and Carlton agreed that Fruitland's interests would be best served if petitioner controlled the partnership's financial affairs. This arrangement was in response to Carlton's affinity for gambling and remained in effect throughout the years at issue.

During the years at issue, petitioner maintained a checking account at a local institution on behalf of Fruitland. Both petitioner and Carlton were listed as owners of the account. While petitioner made deposits to this checking account as needed to conduct Fruitland's daily activities, he collected and stored much of the cash generated by Fruitland's operation in paper bags. Petitioner transported these bags of cash to and from Fruitland's place of business each day. Often, while at his residence, petitioner stored the bags of cash under his bedroom mattress. When the quantity of cash got too burdensome, petitioner used the cash to purchase cashier's checks. Each cashier's check listed petitioner as the sole payee. Petitioner stored these cashier's checks in two safety deposit boxes maintained at a local bank. Although Carlton was aware of the existence, contents, and location of these safety deposit boxes, he did not have authorized access to them. Only petitioners had access to the contents of the safety deposit boxes. During the years at issue, petitioner purchased cashier's checks in the following amounts and on the following dates:

### Taxable Year 1987

| Date | Amount |
|------|--------|
| June 2, 1987 | $5,000 |
| July 9, 1987 | 5,000 |
| July 9, 1987 | 5,000 |
| July 17, 1987 | 5,000 |
| July 17, 1987 | 5,000 |
| Aug. 25, 1987 | 5,000 |
| Aug. 25, 1987 | 5,000 |
| Aug. 25, 1987 | 5,000 |
| Total | 40,000 |

### Taxable Year 1988

| Date | Amount |
| --- | --- |
| Jan. 7, 1988 | $5,000 |
| Jan. 7, 1988 | 5,000 |
| July 7, 1988 | 9,990 |
| Sept. 9, 1988 | 9,990 |
| Sept. 16, 1988 | 9,990 |
| Sept. 30, 1988 | 9,995 |
| Oct. 3, 1988 | 9,995 |
| Oct. 4, 1988 | 9,995 |
| Oct. 5, 1988 | 9,995 |
| Nov. 3, 1988 | 9,995 |
| Nov. 7, 1988 | 9,995 |
| Dec. 28, 1988 | 9,995 |
| Total | 109,935 |

### Taxable Year 1989

| Date | Amount |
| --- | --- |
| May 18, 1989 | $9,995 |
| May 19, 1989 | 9,995 |
| May 25, 1989 | 9,995 |
| May 26, 1989 | 9,995 |
| June 7, 1989 | 9,995 |
| June 8, 1989 | 10,000 |
| June 16, 1989 | 10,000 |
| June 28, 1989 | 9,995 |
| June 30, 1989 | 9,975 |
| July 13, 1989 | 9,975 |
| July 28, 1989 | 9,995 |
| July 31, 1989 | 9,995 |
| Aug. 4, 1989 | 9,995 |
| Aug. 10, 1989 | 9,995 |
| Aug. 16, 1989 | 9,995 |
| Aug. 21, 1989 | 9,995 |
| Total | 159,890 |

During 1989, petitioner negotiated cashier's checks amounting to $59,985 on behalf of Fruitland.

Petitioner denies any knowledge of the Currency and Foreign Transaction Reporting Act, the relevant portion of which is now

codified at 31 U.S.C. sec. 5313(a) (1988), and its supporting regulation[2] requiring that financial institutions report currency transactions in excess of $10,000.  Petitioner explained that many of the cashier's checks were slightly under the $10,000 threshold simply because the institution from which the cashier's checks were purchased assessed a $5 fee for the purchase of cashier's checks in amounts equal to or greater than $10,000.

As part of their partnership agreement, petitioner and Carlton had orally agreed that their compensation with regard to the services provided to Fruitland was to be equal. Nevertheless, neither petitioner nor Carlton had devised a method for ensuring that this agreement would be carried out with any degree of precision.  Their agreement was simply based on trust. Carlton received a salary, payable biweekly, in exchange for the services he provided to Fruitland.  Petitioner, on the other hand, did not receive a salary.  Instead, in exchange for the services he provided to Fruitland, petitioner was authorized to draw checks against the partnership's checking account for personal purposes.  During the years at issue, petitioner wrote checks against the partnership's account in order to pay personal living expenses in the following amounts:

| Year | Amount |
|------|--------|
| 1987 | $30,691 |
| 1988 | 44,969 |

[2]31 C.F.R. sec. 103.22(a) (1994).

1989        59,454

Neither petitioner nor Carlton maintained formal records of Fruitland's financial affairs.  Although the partnership owned a cash register, it was not systematically used to reflect Fruitland's sales activity.  Reports of daily revenues were not maintained.  Invoices reflecting Fruitland's purchases were informally collected in paper bags.

For each year at issue, a professional accountant prepared both Fruitland's Federal partnership returns and petitioners' Federal income tax returns.  In computing Fruitland's gross receipts for a given taxable year, the accountant applied a gross markup rate to Fruitland's cost of goods sold.  The accountant determined cost of goods sold from receipts provided by petitioner.  These were the same receipts petitioner claims to have accumulated in paper bags.

On their Schedule E for each taxable year at issue, petitioners reported the following distributive share amounts:

| Item | 1987 | 1988 | 1989 |
|---|---|---|---|
| Ordinary income from business activity | $6,748 | $7,281 | $5,360 |
| Guaranteed payment | 33,800 | 36,800 | 34,500 |
| Total | 40,548 | 44,081 | 39,860 |

Schedule K-1 of Fruitland's Federal partnership returns lists the following amounts as having been allocated to Carlton with respect to each taxable year at issue:

| Item | 1987 | 1988 | 1989 |
|------|------|------|------|
| Ordinary income from business activity | $6,747 | $7,280 | $5,359 |
| Guaranteed payment | 29,900 | 32,900 | 31,500 |
| Total | 36,647 | 40,180 | 36,859 |

In 1990, petitioner was the target of a criminal investigation. Petitioner was charged with three counts of willfully and knowingly attempting to evade Federal income tax by filing false and fraudulent returns. Count 1 pertained to taxable year 1987, while the second and third counts pertained to taxable years 1988 and 1989, respectively. Petitioner entered a guilty plea to count 3.

Petitioners concede that they underreported income in each taxable year at issue. Petitioners maintain, however, that the amount of unreported income for each taxable year at issue is equal to the amount of personal living expenses which petitioner paid by drawing checks against Fruitland's checking account, plus one-half of the cashier's checks purchased by petitioner during the taxable year, less one-half of the amount of cashier's checks negotiated during the taxable year, less the amount of income reported as received from Fruitland on petitioners' tax return. The following table illustrates petitioners' computation of unreported income for each taxable year at issue:

|                                                        | 1987 | 1988 | 1989 |
|--------------------------------------------------------|------|------|------|
| Personal expenses from Fruitland's checking account    | [1]$30,691 | $44,969 | $59,454 |
| One-half of the cashier's checks                       | 20,000 | 54,967 | 79,955 |
| One-half of the negotiated cashier's checks            | - | - | [2](29,993) |
| Amount reported on petitioners' return                 | (40,548) | [3](44,081) | (39,860) |
| Unreported income                                      | 10,143 | 55,855 | 69,556 |

[1]On brief, petitioners incorrectly list $30,961 as the amount of personal expenses which petitioner paid by writing checks against Fruitland's checking account in 1987. Accordingly, unreported income for taxable year 1987 is reduced by $270.

[2]On brief, petitioners incorrectly list $29,979 as equal to one-half of the cashier's checks which were negotiated during 1989. Accordingly, this correction results in a decrease to unreported income of $14 for taxable year 1989.

[3]On brief, petitioners erroneously list $59,454 as the income received from Fruitland and reported on their return. Accordingly, unreported income for 1988 is increased by $15,373.

Respondent determined that petitioner embezzled the money which he used to purchase the cashier's checks, and that such embezzled funds constitute income to petitioners. Respondent also determined that petitioners' income for the taxable years at issue is equal to the amount petitioner drew against the partnership's checking account used to pay for personal living expenses. Consequently, respondent further determined that petitioner had unreported income for the taxable years at issue equal to the amount of personal living expenses petitioner paid

by writing checks against Fruitland's checking account, plus the entire amount of the cashier's checks purchased by petitioner during the taxable year, less the entire amount of cashier's checks negotiated during the taxable year, less the amount of income reported as received from Fruitland on petitioners' tax return in the form of a guaranteed payment. Respondent's calculation of petitioners' unreported income for each taxable year may be summarized by the following table:

|  | 1987 | 1988 | 1989 |
|---|---|---|---|
| Personal expenses from Fruitland's checking account | $30,691 | $44,969 | $59,454 |
| Cashier's checks | 40,000 | 109,934 | 159,910 |
| Negotiated cashier's checks | - | - | (59,985) |
| Amount reported on petitioners' return as a guaranteed payment | (33,800) | (36,800) | (34,500) |
| Unreported income | 36,891 | 118,103 | 124,879 |

OPINION

The parties agree that petitioners have unreported income with respect to each taxable year at issue. A dispute exists, however, as to the amount of unreported income. Each party has advanced a particular formula which each contends should be used to compute the amount of petitioners' unreported income.

Although the two formulas have many similarities, their differences are distinct. The principal difference stems from each proponent's treatment of the cashier's checks purchased by petitioner. Respondent's formula has as its basis the theory that petitioner purchased the cashier's checks with embezzled funds, and therefore all funds are attributable to petitioners as embezzlement income. In contrast, petitioners argue that the cashier's checks remained partnership property, belonging equally to petitioner and Carlton, and therefore, pursuant to section 702, only one-half of the funds is attributable to petitioners.

Respondent also contends that the deficiencies resulting from petitioners' unreported income are subject to the civil fraud penalty. Petitioners disagree and maintain that respondent has failed to carry her burden of establishing fraud on the part of either Anthony Walters or Linda Walters with respect to taxable years 1987 and 1988. Petitioners further maintain that respondent has failed to establish fraud on the part of Linda Walters with respect to taxable year 1989. In light of petitioner's guilty plea to criminal tax fraud with regard to his 1989 return, petitioners recognize the doctrine of collateral estoppel and concede that the deficiency resulting from their unreported income for taxable year 1989 is subject to the civil fraud penalty. Petitioners contend, however, that only Anthony Walters is liable for the civil fraud penalty for taxable year 1989.

We find that petitioners did not receive embezzlement income and, as a consequence, that their method of computing the amount of their unreported income is correct.  However, while we agree that respondent has failed to prove fraud on the part of Linda Walters for any taxable year at issue, we disagree with petitioners' contention that respondent has failed to establish fraud on the part of Anthony Walters with respect to the taxable years at issue.

Issue 1.   Embezzlement Income

The first issue for our consideration is whether petitioners received embezzlement income stemming from petitioner's purchase and control of the cashier's checks during the taxable years at issue.  It is necessary for us to resolve this issue as its resolution guides our analysis of how petitioners' unreported income for each taxable year at issue is to be computed.  More specifically, respondent's computation requires a finding that petitioner's handling of the cashier's checks gave rise to embezzlement income.  In contrast, petitioners' computation requires a finding that petitioner's handling of the cashier's checks did not give rise to embezzlement income.

Respondent's determinations are presumed correct, and petitioners bear the burden of proving otherwise.  Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933).  Respondent asserts that petitioner embezzled funds belonging to Fruitland and converted those funds into cashier's checks for his personal use.

Accordingly, respondent contends that the alleged embezzled funds constitute gross income to petitioners in the year of embezzlement. It is well established that profits or gains earned illegally constitute gross income within the meaning of section 61. James v. United States, 366 U.S. 213 (1961). Embezzled funds, therefore, constitute income to the embezzler. Id. In James, the Supreme Court explained that a taxpayer has income when he or she "acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition". Id. at 219. Embezzlement income results from a taxpayer's embezzlement activity if such activity "enriches" the taxpayer. Id. at 221.

Petitioners contend that an application of the principles enunciated in James v. United States, supra, necessitates a conclusion that petitioners did not realize embezzlement income as a result of petitioner's using the Fruitland funds to purchase cashier's checks. Petitioners argue that Carlton was fully aware of the cashier's checks and that he had approved of petitioner's exclusive handling of them. Petitioner testified that he considered the cashier's checks to be owned jointly by himself and Carlton, and the cashier's checks represented their life savings. Petitioner further testified that he was the sole payee of each cashier's check simply for reasons of administrative convenience given his responsibility to manage the financial

affairs of the partnership. Petitioner also testified that, with one exception, the negotiation of all cashier's checks was performed on behalf of Fruitland. The sole exception involved the negotiation of a single cashier's check on behalf of another venture engaged in by petitioner and Carlton.

Carlton's testimony is consistent with petitioner's testimony. Carlton testified that, while he was unaware of the exact amount represented by the cashier's checks, he was aware of their existence and location. Carlton further testified that he never questioned, nor had reason to question, petitioner's handling of the cashier's checks. Carlton went on to testify that he considered the cashier's checks to belong equally to himself and petitioner. Carlton also testified that he considered the cashier's checks to represent both his and petitioner's life savings that were to be used only in the event of an emergency.

Respondent does not dispute that Carlton consented to petitioner's exclusive control of the partnership's financial affairs. Respondent contends, however, that the facts of this case clearly indicate that petitioner surreptitiously diverted portions of Fruitland's receipts for his personal use without Carlton's consent. Respondent maintains that this is evidenced by petitioners' exclusive control of the cashier's checks. Specifically, respondent explains that the cashier's checks could be negotiated only by petitioner and that only petitioners had

authorized access to the safety deposit boxes that contained the cashier's checks.

Although respondent's determinations are presumed to be correct, we think petitioners have sufficiently rebutted that presumption with regard to this issue. Petitioner's handling of the funds used to purchase the cashier's checks and his subsequent control of those cashier's checks is indeed unconventional. But it is nonetheless consistent with the partnership agreement. Furthermore, this unorthodox management of financial assets is consistent with testimony provided by both petitioner and Carlton. Carlton, perhaps naively, consented to petitioner's control of the money which he used to purchase the cashier's checks. Moreover, although he was uncertain of the amount invested in cashier's checks, Carlton testified that he knew the cashier's checks existed. Additionally, Carlton testified that petitioner would inform him of his plans to purchase additional cashier's checks prior to purchasing them.

When the evidence is considered in the aggregate, the outcome is unfavorable to respondent. Petitioners have presented corroborated and uncontradicted testimony that necessitates a conclusion that petitioner did not embezzle funds from Fruitland. Carlton's testimony is the most compelling evidence in this regard. If this Court were to sustain respondent's determination, it would be necessary for us to conclude that the victim of respondent's embezzlement theory committed perjury when

he testified that petitioner did not embezzle partnership funds. This we are unprepared to do.  Furthermore, while there may be an appearance of impropriety associated with the facts surrounding petitioner's control of the cashier's checks, such facts are consistent with petitioner's and Carlton's agreement that petitioner manage the financial assets of the partnership. Accordingly, we find that the cashier's checks remained assets of the partnership and that petitioners did not receive embezzlement income resulting from petitioner's purchase and control of them.

Issue 2.  Computation of Unreported Income

While the parties agree that petitioners failed to report various amounts of income received from Fruitland during the taxable years at issue, they remain in disagreement with respect to the amount of unreported income.  Petitioners contend that the amount of unreported income for each taxable year at issue is equal to the amount of personal living expenses petitioner paid by drawing checks against Fruitland's checking account during the taxable year, plus one-half of the cashier's checks purchased by petitioner during the taxable year, less one-half of the amount of cashier's checks negotiated during the taxable year, less the amount of income reported as received from Fruitland on petitioners' tax return.

Relying on the theory that petitioner purchased the cashier's checks with embezzled funds, respondent contends that the amount of unreported income for each taxable year at issue is

equal to the amount of personal living expenses petitioner paid by drawing checks against Fruitland's checking account during the taxable year, plus the entire amount of the cashier's checks purchased by petitioner during the taxable year, less the entire amount of the cashier's checks negotiated during the taxable year, less the amount of income reported as received from Fruitland on petitioners' tax return in the form of a guaranteed payment.

With three exceptions, these two formulas are equivalent. Respondent's formula differs from petitioners' formula in that it includes in the computation the entire amount of the cashier's checks purchased and maintained by petitioner. Petitioners, on the other hand, contend that the computation should consider only one-half of that amount. Whereas respondent's proposal is consistent with her theory that petitioner purchased the cashier's checks with embezzled funds, the proposal advanced by petitioners is consistent with their argument that the cashier's checks represent partnership property. In any event, as a consequence of having concluded that the cashier's checks remained partnership assets and that petitioner did not embezzle the funds that he used to purchase such checks, we find that only one-half of the amount of the cashier's checks is to be considered in the computation of unreported income for each taxable year.

The second area in which the two formulas differ pertains to the reduction for those cashier's checks negotiated by petitioner during the taxable years at issue.[3] Respondent's proposed reduction equals the entire amount of cashier's checks negotiated during a particular taxable year, while petitioners' proposed reduction equals one-half of that amount. Each proposal, however, is at least arguably consistent with each proponent's theory of the case. Petitioners maintain that the cashier's checks negotiated during a particular taxable year should not be treated any differently than the cashier's checks that were not negotiated during that taxable year because all of the cashier's checks constituted partnership property. In contrast, respondent's proposed reduction does not recognize petitioners' section 702 distributive share recognition obligation with respect to any portion of the funds used to purchase the cashier's checks. That is, respondent characterizes the funds petitioner used to purchase the cashier's checks as giving rise entirely to embezzlement income, none of which is recognized or

---

[3]With respect to both petitioners' and respondent's computation of unreported income, this particular variable is potentially oversimplified and misleading. Both parties include it in their computation solely to account for cashier's checks which petitioner negotiated during taxable year 1989. Neither party contends that any cashier's checks were negotiated during earlier taxable years. The record does not support a conclusion that the cashier's checks negotiated in 1989 were actually purchased in 1989. Yet, both parties presume this to be the case. Accordingly, we too will presume that the checks negotiated in 1989 were purchased in 1989.

taken into account pursuant to section 702.  Although this is arguably consistent with respondent's embezzlement theory, we have resolved the embezzlement issue in petitioners' favor and need consider it no further.

The effect of petitioners' argument should be appreciated. The necessary consequence of arguing for a smaller reduction is that unreported income will be higher.  Such an argument, however, is necessary if consistency is to be maintained with their theory that the cashier's checks belonged equally to Carlton and petitioner.  In any event, as a result of having resolved the embezzlement issue in petitioners' favor, we find that only one-half of the negotiated cashier's checks should be considered in the computation of petitioners' unreported income for each taxable year at issue.

The final area in which respondent's formula for calculating petitioners' unreported income differs from the formula advanced by petitioners involves the amount of the reduction necessary to account for partnership income reported on petitioners' returns. Petitioners maintain that this reduction should equal the entire amount of income identified on their Schedules E as having been received from Fruitland.  In contrast, respondent contends that the amount of this reduction should be limited to the amount petitioners listed on their returns as income received in the form of guaranteed payments.  Respondent maintains that limiting the amount of this reduction to the amount petitioners list on

their returns as guaranteed payments is appropriate for two reasons. We decline to accept respondent's first explanation supporting partial recognition because it is a product of her embezzlement theory. However, respondent also argues that such partial recognition is appropriate despite her embezzlement theory. Respondent contends that petitioners have not established whether and to what extent the unreported income stemming from the cashier's checks and personal expenses is included in the numbers provided on their Schedules E. As a consequence, respondent has elected to recognize only those amounts identified by petitioners as guaranteed payments.

We are unpersuaded by respondent's fleeting explanation of her rationale for making this election. Accordingly, we find that the computation to be used in calculating petitioners' unreported income must involve a reduction for the entire amount of gross income identified by petitioners as received from Fruitland on their Schedule E for each taxable year at issue.

Issue 3. Civil Fraud

We now turn to the question of whether petitioners are liable for the addition to tax for civil fraud for the taxable years at issue. In light of petitioner's guilty plea to criminal tax fraud with respect to his return for taxable year 1989, petitioners concede that the doctrine of collateral estoppel operates to prevent petitioner from contesting the civil fraud issue with respect to taxable year 1989. This concession is

proper. The doctrine of collateral estoppel is intended to avoid repetitious litigation by precluding a second litigation of an issue of fact or law that was actually litigated and that culminated in a valid and final judgment. Niedringhaus v. Commissioner, 99 T.C. 202, 213 (1992). The doctrine applies equally to posttrial convictions and convictions based upon a guilty plea. Stone v. Commissioner, 56 T.C. 213 (1971); Cleveland v. Commissioner, T.C. Memo. 1983-299. Accordingly, we focus our attention on taxable years 1987 and 1988.

Section 6653(b)(1) provides that if any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud. When a joint return is filed, however, it is necessary for the Commissioner to establish that some part of the underpayment was due to fraud on the part of both spouses if she seeks to hold both spouses liable for additions to tax for fraud. Sec. 6653(b)(3); Stone v. Commissioner, supra at 226-227.

Fraud is defined as an intentional wrongdoing designed to evade tax believed to be owing. Miller v. Commissioner, 94 T.C. 316, 332 (1990). The Commissioner bears the burden to prove fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). The Commissioner must show that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or

otherwise prevent the collection of taxes. Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). When fraud is determined for more than 1 taxable year, the Commissioner must show that an underpayment exists and that some part of the underpayment was due to fraud for each year. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969).

The existence of fraud is a factual question to be determined upon a consideration of the entire record. Grosshandler v. Commissioner, supra at 19. Fraud cannot be presumed or imputed but must be established by clear and convincing evidence. Id. at 19. Fraud cannot be found if the circumstances only create a suspicion of its existence. Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989). Because direct proof of a taxpayer's intent is rarely available, fraud may be proved by circumstantial evidence. Spies v. United States, 317 U.S. 492 (1943). Fraud may be properly inferred where a taxpayer's entire course of conduct establishes the requisite fraudulent intent. Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986). The intent to conceal or mislead may be inferred from a pattern of conduct. See Spies v. United States, supra at 499; Guinan v. Commissioner, T.C. Memo. 1991-190.

Courts rely on a number of indicia of fraud when they decide civil tax fraud cases. Edwards v. Commissioner, T.C. Memo. 1995-77. Although no single factor is necessarily sufficient to establish fraud, the existence of several indicia is persuasive

evidence of fraud.  Johnson v. Commissioner, T.C. Memo. 1993-227.
These indicia or badges of fraud include:  (1) Understating
income; (2) maintaining inadequate records; (3) giving
implausible or inconsistent explanations of behavior; (4)
concealing assets; and (5) dealing in cash.  Meier v.
Commissioner, 91 T.C. 273 (1988); Bragg v. Commissioner, T.C.
Memo. 1993-479.  These badges of fraud are nonexclusive.  Miller
v. Commissioner, supra at 334.  Both the taxpayer's background
and the context of the events in question may be considered as
circumstantial evidence of fraud.  Spies v. United States, supra
at 497.  However, the mere failure to report income is not
sufficient to establish fraud.  Rowlee v. Commissioner, supra at
1123.  On the other hand, consistent and substantial
understatements of large amounts of taxable income over a period
of years have been held to be strong evidence of fraud.  Smith v.
Commissioner, 32 T.C. 985, 987 (1959).

Considering petitioner's entire course of conduct, the
record provides us with ample basis for finding that the
underpayment of tax for each taxable year at issue is due to
fraud on the part of petitioner.  See Kotmair v. Commissioner,
supra at 1260.

Respondent has shown the existence of multiple indicia of
fraud.  Petitioners concede that they underreported income
resulting in underpayments of tax for each taxable year at issue.
The unreported income in each year is most conspicuous here with

petitioners' agreeing that the gross income in their returns for 1987, 1988, and 1989 was understated in the amounts of $10,143, $55,855, and $69,556, respectively.  These amounts are substantial when compared to the total gross income of $40,548, $44,081, and $39,860 reported as received from Fruitland during 1987, 1988, and 1989, respectively.  There is little doubt that petitioner knew that his income for each taxable year at issue exceeded the amount reflected on his return for that year. Petitioner was the partner responsible for managing the financial affairs of the partnership.  All transactions involving the partnership checking account, including those transactions relating to petitioner's personal expenditures, were reflected on bank statements which petitioner received.  Petitioner was also the partner who purchased and maintained the cashier's checks. Despite possessing knowledge of this information, petitioner refrained from sharing it with his accountant.  Instead, petitioner filed the returns as prepared by his accountant.  The frequency and magnitude of the unreported income conceded by petitioners is probative evidence that supports our finding that the understatements of income were fraudulent, rather than inadvertent or accidental.  Such a pattern of consistent underreporting of income is strong evidence of fraud.  Otsuki v. Commissioner, supra at 106-108; Smith v. Commissioner, supra. This evidence justifies the inference of fraud.  See Holland v. United States, 348 U.S. 121, 137 (1954).

In addition to the consistent pattern of substantial understatements, petitioner, being the partner responsible for managing the financial affairs of the partnership, did not maintain adequate records documenting such financial affairs. Additionally, although Fruitland operated almost exclusively on a cash basis, petitioner frequently transacted business without using the partnership's cash register. The failure to maintain addequate financial records is an additional indicium of fraud. See Bragg v. Commissioner, supra.

Petitioner routinely used large sums of cash to purchase cashier's checks, often within days of each other, in amounts slightly less than $10,000. Petitioner's self-serving testimony concerning his unfamiliarity with the Federal currency transaction reporting requirements lacks credibility. Moreover, we give little credence to petitioner's testimony pertaining to his aversion to financial institutions. Such explanations are implausible. In a manner virtually undetectable by anyone concerned, petitioner kept large sums of money in the form of non-interest-bearing instruments for an extended period of time. These circumstances suggest that petitioner's behavior was motivated not by an aversion to financial institutions, but rather an intent to conceal the existence of the money represented by the cashier's checks. Providing implausible explanations, dealing in large amounts of cash, and the

concealment of assets are additional indicia of fraud.  See <u>Meier</u> <u>v. Commissioner</u>, <u>supra</u>.

Petitioners contend that even if this Court finds that the fraud penalty can be properly imposed against that portion of the deficiency arising from petitioner's personal use of the partnership's checking account, this Court must nevertheless find that the fraud penalty cannot be properly imposed against that portion of the deficiency resulting from the cashier's checks. We disagree.  Petitioners' argument in this regard is wanting in substance.  Petitioners have offered no credible evidence to refute respondent's proof of fraud with respect to any portion of the understatements.  Hence, section 6653(b)(2) can provide petitioners with no refuge.

Although we conclude that the record provides ample basis for finding that the entire underpayment of tax for each taxable year at issue is due to fraud on the part of petitioner, the record lacks a sufficient basis for us to conclude that any portion of the underpayment for any taxable year at issue was due to fraud on the part of petitioner Linda Walters (Linda).  The fraud of one spouse cannot be attributed to the other spouse. <u>Stone v. Commissioner</u>, 56 T.C. 213 (1971).  Respondent has the burden of proving by clear and convincing evidence that Linda intended to evade taxes.  Rule 142(b); <u>Stone v. Commissioner</u>, <u>supra</u>.  Respondent has not met this burden.  While Linda may have known, or had reason to know, of petitioner's tax evasion scheme,

respondent has failed to present clear and convincing evidence of such knowledge. Aside from her status as petitioner's spouse, the record is essentially devoid of evidence concerning Linda.

Not only has respondent failed to establish fraud on the part of Linda with respect to taxable years 1987 and 1988; she has likewise failed with respect to taxable year 1989. Although the doctrine of collateral estoppel prevents petitioner from contesting the civil fraud penalty with respect to taxable year 1989, the doctrine does not effect an estoppel against Linda because she was not a party to the prior criminal proceeding. Randolph v. Commissioner, 74 T.C. 284 (1980); Stone v. Commissioner, supra.

In sum, the facts of this case clearly and convincingly establish that petitioner, but not his spouse, had an intent to evade the Federal income tax with respect to each year at issue. Accordingly, we find that petitioner is liable for the addition to tax for fraud under section 6653(b)(1) for taxable years 1987 and 1988. We also find that petitioner is liable for the civil fraud penalty under section 6663 for taxable year 1989. We further find that Linda is not liable for the civil fraud addition to tax under section 6653(b)(1) for taxable years 1987 or 1988; nor is Linda liable for the civil fraud penalty under section 6663 for taxable year 1989.

Issue 4.  Addition to Tax, Section 6661

Respondent determined that petitioners are liable for the addition to tax pursuant to section 6661 for taxable years 1987 and 1988 due to a substantial understatement of income tax. Respondent's determination carries with it the presumption of correctness.  Rule 142(a).

The addition is 25 percent of any underpayment attributable to a substantial understatement.  Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988).  A substantial understatement is one which exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6661(b)(1)(A).  Petitioners make no argument or showing with regard to substantial authority or adequate disclosure.  Sec. 6661(b)(2)(B).  Petitioners' alternative argument, which is grounded on a theory of ignorance, is without substance.

The applicability of this addition to tax turns on the recomputation of petitioners' tax liabilities for 1987 and 1988 in accordance with this opinion.  If such recomputation reflects substantial understatements, petitioners are liable for these additions to tax.

To reflect the foregoing,

Decision will be

entered under Rule 155.