T.C. Summary Opinion 2006-49

UNITED STATES TAX COURT

MICHAEL AND PENNY RHODES, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17280-03S.            Filed April 11, 2006.

Douglas E. Johnston, for petitioners.

Timothy A. Lohrstorfer, for respondent.

COUVILLION, Special Trial Judge:  This case was heard
pursuant to section 7463 in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, subsequent section references
are to the Internal Revenue Code in effect for the years at
issue, and all Rule references are to the Tax Court Rules of
Practice and Procedure.

The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined the following deficiencies in Federal income taxes and the penalties for fraud under section 6663(a):

| Year | Deficiency | Penalty Sec. 6663(a) |
|------|-----------|----------------------|
| 1994 | $3,360 | $2,520 |
| 1995 | 2,623 | 1,967 |

The issues for decision are: (1) Whether petitioners are entitled to deduct on Schedules C, Profit or Loss From Business, losses in the amounts of $19,738.50 and $17,125.39, respectively, for 1994 and 1995, and (2) whether petitioner wife Penny Rhodes (Ms. Rhodes) is liable for section 6663(a) penalties for fraud with respect to the joint 1994 and 1995 Federal income tax returns of her and her spouse.

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are incorporated herein by reference. Petitioners' legal residence at the time the petition was filed was Garrett, Indiana.

During the years at issue, petitioners lived and worked in Garrett, Indiana. Petitioner husband (Mr. Rhodes) was a railroad brakeman and conductor for CSX Transportation, Inc., during the years at issue. Beginning in 1993 and during the years at issue, Ms. Rhodes operated Keepsake Designer Creations (Keepsake), a

sewing, crafts, and floral arrangement activity.  Ms. Rhodes's background consisted of high school and 1 year of a vocational school where she studied medical assisting.  She has no formal training in sewing or floral arrangements.[2]  Petitioners also became Amway sale distributors on January 29, 1990, and continued in this activity during the years at issue.  Ms. Rhodes primarily conducted the Amway activity.  Ms. Rhodes was responsible for maintaining the books and records for both Keepsake and Amway.

Petitioners timely filed joint Federal income tax returns for 1994 and 1995.  They reported the following amounts from the aforesaid activities on their Schedules C for 1994 and 1995:

| Keepsake | 1994 | 1995 |
|---|---|---|
| Gross income | $18,396.42 | $ 6,286.58 |
| Expenses | | |
| Car and truck | 10,035.16 | 3,772.80 |
| Insurance | 396.74 | 378.00 |
| Office expenses | 110.87 | 97.32 |
| Supplies | 24,564.98 | 10,973.16 |
| Utilities | 623.64 | 237.14 |
| Other expenses | 148.00 | 658.19 |
| Total expenses | 35,879.39 | 16,116.61 |
| Net loss | $17,482.97 | $ 9,830.03 |

---

[2]Ms. Rhodes enrolled in a continuing education class for floral designing through Indiana-Purdue University after the tax years in question.

| Amway | 1994 | 1995 |
|---|---|---|
| Gross income | $ 157.49 | $ 999.17 |
| Expenses | | |
|     Car and truck | 1,672.43 | 6,830.70 |
|     Insurance | 396.74 | 378.00 |
|     Office expenses | 75.37 | -0- |
|     Legal | -0- | 25.00 |
|     Supplies | -0- | 127.67 |
|     Utilities | 211.48 | 873.16 |
|     Other expenses | 57.00 | 60.00 |
| Total expenses | 2,413.02 | 8,294.53 |
| Net loss | $2,255.53 | $7,295.36 |

In the notice of deficiency, respondent disallowed the losses resulting from the claimed deductions for the reported expenses because petitioners (1) were not operating for profit a business under section 183, or, in the alternative (2) failed to substantiate the expenses of the two activities. Additionally, respondent determined all documentation submitted by petitioners in support of the reported expenses was false and determined the section 6663 fraud penalty with respect to those activities.[3]

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving entitlement to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). The taxpayer is required to identify

---

[3]The notice of deficiency is addressed jointly to both petitioners. In the determination of fraud, the notice of deficiency does not specify that it is determined only as to Ms. Rhodes. As such, the Court construes the notice of deficiency as a determination of fraud against both petitioners; however, at trial and on brief, respondent asserts that the fraud penalty is only against Ms. Rhodes. Respondent, therefore, is deemed to have conceded the fraud penalty as to Mr. Rhodes.

each deduction available and show that all requirements have been met. <u>New Colonial Ice Co. v. Helvering</u>, 292 U.S. 435, 440 (1934). It is also the taxpayer's responsibility to maintain records sufficient to enable the Commissioner to determine the correct tax liability. Sec. 6001; sec. 1.6001-1(a), Income Tax Regs.[4]

The first issue is whether petitioners are entitled to deduct the expenses that created net operating losses. Respondent asserts that petitioners did not engage in the activities with the requisite profit objectives, and, alternatively, that, if petitioners operated the businesses for profit, they failed to substantiate the expenses reported on their Schedules C in excess of the reported gross income. The Court agrees with respondent.[5]

Section 162 allows a deduction for ordinary and necessary expenses that are paid or incurred during the taxable year in

---

[4]Under sec. 7454(a), the burden of proof as to fraud is on the Commissioner. As to all other issues, sec. 7491(a), in some instances, shifts the burden of proof to the Commissioner but only as to the examination of taxpayers' returns that commenced after July 22, 1998. The examination in this case commenced in 1996; therefore, the Court does not need to address sec. 7491(a).

[5]Because the Court holds that petitioners may not deduct the excess of the claimed Schedule C expenses so as to create net operating losses for the years at issue due to lack of substantiation, it is not necessary to address whether petitioners were in fact operating a business for profit.

carrying on a trade or business. Sec. 162(a); Deputy v. duPont, 308 U.S. 488, 495 (1940).

Petitioners deducted $24,564.98 and $10,973.16 for supplies for Keepsake in 1994 and 1995, respectively. In the examination of the 1994 return, Ms. Rhodes presented numerous receipts to substantiate the claimed deductions. Those receipts totaled almost $31,000, $6,000 more than what was claimed on the 1994 tax return. For 1995, Ms. Rhodes's receipts from the purported suppliers, Frank's Nursery and Crafts, Inc. (Frank's), alone totaled $2,557.14 more than the amount claimed for supplies on that year's return.

When respondent's examining agent questioned Ms. Rhodes about her receipts, she claimed to have purchased the bulk of her supplies from Frank's, a significant amount from a craft store named the Silk Shop, and the remainder from various stores such as Michael's or Wal-mart.

With respect to purchases at Frank's, Ms. Rhodes submitted to the examiner and entered into evidence at trial purchase orders from 1994 and 1995 totaling $24,076 and $13,530.30, respectively. The purchase orders were generic and bore Frank's name and address typed in the upper left-hand corner. The transactions were handwritten and reflected that Ms. Rhodes paid cash in amounts between $2,500 and $9,000 to an individual referred to as "C.O." for flowers, greenery, and other craft

products. Ms. Rhodes stated that C.O. was a Frank's employee whose name was Chloe. At trial, several employees and managers of Frank's testified that the purchase orders presented by Ms. Rhodes were not from Frank's, the store only sold items wholesale from corporate headquarters, and the locations from which Ms. Rhodes stated she bought the supplies did not have enough cash receipts on the days in question to support purchases in the amounts petitioners claimed. Additionally, the corporate human resources manager for Frank's during the years in question testified that he and another human resources employee verified that no Chloe, Chloe O., or C.O. had ever worked at the Frank's locations where Ms. Rhodes claimed she made her purchases.

Although Ms. Rhodes told the examiner that all her purchases were made inside the Frank's store, she testified at trial that she purchased her merchandise in the parking area of the store off the back of a large truck that was attended to by Chloe, whom she believed was a Frank's employee. She testified that, although Frank's had refused to sell merchandise wholesale to her, Chloe approached her and offered to sell the merchandise to her at wholesale prices. Ms. Rhodes claimed that Chloe would call her whenever a new "shipment" arrived and then she would meet Chloe in the parking lot of Frank's and complete the sale. Chloe dealt only in cash and gave Ms. Rhodes a Frank's purchase order at the end of each transaction. Ms. Rhodes testified she

was not suspicious as to the manner her transactions were handled and stated the products were "cheaper than Frank's and better quality". She acknowledged, however, that, although she believed she was dealing with Frank's at the time, "to my knowledge now, looking back, hindsight, I guess I wasn't".

Several Frank's employees testified at trial that it would not have been possible for Ms. Rhodes to purchases items wholesale from Chloe in the parking lot of Frank's without drawing the attention of the other employees. Frank's employees often worked outside in the warmer months selling lawn items, and none of them ever saw a woman matching Chloe's description, or anyone else, selling items from a large white truck. Also, there are several large windows in the front of every Frank's where employees may look out onto the parking lot, and no one ever witnessed the transactions Ms. Rhodes claimed. Finally, Frank's employees testified that Ms. Rhodes could not have been able to drive "around back" of Frank's and purchase items off the loading dock, because that area was restricted from customers and monitored by employees. If a customer attempted to drive behind Frank's, an employee would immediately notice and investigate.

With respect to purchases Ms. Rhodes claimed she made at the Silk Shop, she testified that the Silk Shop was no longer in business when she was audited but had been located in Coldwater, Michigan. Ms. Rhodes, however, could offer no specific address

or telephone number for the Silk Shop either to the examiner or at trial. The examiner investigated her claim and found that there had never been a business called the Silk Shop in or around Coldwater, Michigan, and neither the Chamber of Commerce nor the County Clerk's office had any record of a store by that name. Furthermore, respondent offered evidence at trial from area telephone books and city directories for the years 1993, 1994, and 1995; none had a listing for a Silk Shop in or around Coldwater, Michigan.

The Court finds that Ms. Rhodes at no time purchased items, either retail or wholesale, from Frank's, the Silk Shop, or any other store. Moreover, the Court also finds that Ms. Rhodes did not purchase items "off the back of a truck" from someone who she "believed worked for Frank's". The Court finds that the transactions never occurred.

On their Schedules C for Keepsake, petitioners deducted car and truck expenses of $10,035.16 and $3,772.80 for 1994 and 1995, respectively. With respect to travel expenses and certain other expenses, such as expenses relating to the use of listed properties under section 280F(d)(4)(A), including passenger automobiles and any other property used as a means of transportation, section 274(d) imposes stringent substantiation requirements to document particularly the nature and amount of such expenses. For such expenses, substantiation of the amounts

claimed by adequate records or by other sufficient evidence corroborating the expenses is required. Sec. 274(d); sec. 1.274-5T(a)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46014 (Nov. 6, 1985). To meet the adequate records requirements of section 274(d), a taxpayer "shall maintain an account book, diary, log, statement of expense, trip sheets, or similar record * * * and documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure". Sec. 1.274-5T(c)(2)(i), Temporary Income Tax Regs., 50 Fed. Reg. 46017 (Nov. 6, 1985). These substantiation requirements are designed to encourage taxpayers to maintain records, together with documentary evidence substantiating each element of the expense sought to be deducted. Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016 (Nov. 6, 1985).

Ms. Rhodes's records with respect to her car and truck expenses for Keepsake do not satisfy the requirements of section 274(d) and the regulations cited. Ms. Rhodes testified she often drove to numerous stores searching for the best prices for supplies, and, in addition, she drove to a variety of locations to meet with clients and then later drove to wedding or funeral locations to deliver flowers and other decorative arrangements. She kept track of her mileage by writing locations and/or miles driven on a daily calendar. The total miles recorded on her calendars for both years, however, do not match the mileage she

reported on the 1994 and 1995 tax returns. In addition, respondent pointed out numerous inconsistencies in petitioners' records at trial. Several times, Ms. Rhodes listed a mileage amount that she claimed was to give a wedding estimate, but there was no location listing where she drove. At trial, Ms. Rhodes was unable to identify any of these missing locations, nor could she remember the names of people she purportedly met for wedding estimates. Other times, Ms. Rhodes listed travel to a particular store to buy supplies but could furnish no receipts to support the purchases. Several transactions, such as supplies trips, were listed twice on her calendar. Finally, Ms. Rhodes often grossly overestimated the miles she drove to a particular location. For instance, she claimed she drove from Garrett to Toledo to give a wedding estimate. The calendar listed mileage of 542.4; however, the distance between Garrett and Toledo is 133 miles; therefore, the round trip distance would be 266 miles. Ms. Rhodes offered no explanation for these inconsistencies.

Ms. Rhodes claims she and Mr. Rhodes never purchased new tires, had any repair work done, or paid for oil changes, nor did she have any documentation of her odometer readings for 1994 or 1995. Thus, petitioners failed to present any independent evidence supporting the mileage claims. The Court finds that all of Ms. Rhodes's records relating to mileage reported in support of Keepsake are false based on the absence of records and other

testimony at trial. Petitioners' car and truck expenses were not properly substantiated under the cited legal authority.

On the other Schedules C of the tax returns for 1994 and 1995, petitioners deducted car and truck expenses, supplies, insurance, office expenses, and utilities for an Amway activity. Ms. Rhodes was also responsible for all record keeping for this activity. Petitioners deducted car and truck expenses of $1,672.43 and $6,830.70, respectively, for 1994 and 1995. The extent of the records substantiating the mileage reported for Amway trips was a total mileage number listed at the top of monthly calendars. On Ms. Rhodes's monthly calendars for 1995, she listed 27,135 miles driven in support of the Amway activity but only reported 22,769 miles on their 1995 return. Similarly, Ms. Rhodes's monthly calendars for 1994 listed total mileage of 10,239.7; however, only 5,767.4 miles for travel was reported on their 1994 return. Ms. Rhodes offered no explanation for the discrepancies at trial. In addition, Ms. Rhodes's records for the Amway activity were as vague as the records for Keepsake. When Ms. Rhodes went out to recruit distributors, she would simply write "Prospecting Day" and a list of first names with mileage amounts beside them. She could offer up no more specifics on people or locations; however, Ms. Rhodes claimed she had turned over a log book containing specific records to the examiner. The examiner testified that a log book was never

presented to him, and the Court finds his testimony credible. Therefore, as above, petitioners failed to properly substantiate their car and truck expenses.

As for petitioners' office expenses and utilities, their personal residence is listed on the Schedules C for both activities as the business address.  Petitioners offered no documentation or testimony showing they were entitled to deductions for a home office, nor was any evidence offered to substantiate the deductions for either year.  Therefore, the claimed deductions are disallowed in their entirety.

Finally, petitioners claimed supplies deductions for 1994 and 1995.  Ms. Rhodes offered scant documentation supporting these particular business expenses but submitted a few receipts that were purportedly signed by her upline distributor, Kelli Kaufman.  Ms. Kaufman, however, denied it was her signature on those receipts.  Some of the receipts Ms. Rhodes alleged were signed by Ms. Kaufman are dated after Ms. Kaufman ceased participating in Amway.  In light of the other false documentation Ms. Rhodes presented, the Court finds Ms. Kaufman's testimony credible and finds that all documents submitted by petitioners in support of their Amway expenses are false. Petitioners are not entitled to the deductions for the expenses claimed on their return relating to this activity.

The Court accordingly finds that petitioners failed to substantiate any of the expenses in connection with either the Keepsake or Amway activity.  The deductions claimed with respect to these activities, for both years, are disallowed to the extent they exceed the income reported for the activities on petitioners' Schedules C.

Although the record is not entirely clear as to the extent petitioners operated their activities and generated expenses, in the notice of deficiency, respondent did not determine that the reported gross receipts for the 2 years were false or fictitious. Respondent only determined that the expenses claimed in excess of the gross income were false, fictitious, and fraudulent.  In fact, respondent allowed deductions for business expenses for Keepsake and Amway to the extent of the reported gross receipts, $18,553.91 and $7,285.75 for 1994 and 1995, respectively.  As respondent does not challenge whether petitioners received income from either activity, it follows that petitioners generated some expenses in the operation of both Keepsake and Amway.  Therefore, respondent's determination is sustained and petitioners are not entitled to any of the Schedule C losses for either Keepsake or Amway for tax years 1994 and 1995.

The final issue is whether Ms. Rhodes[6] is liable for fraud under section 6663(a)[7] for the years at issue.  Respondent has the burden of proving by clear and convincing evidence that (1) Ms. Rhodes underpaid her tax each year at issue, and (2) that some part of the underpayment is due to fraud.  Sec. 6663(a); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990).

Fraud means actual, intentional wrongdoing, and the intent required is the specific purpose to evade a tax believed to be owing.  Candela v. United States, 635 F.2d 1272 (7th Cir. 1980); Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Mitchell v. Commissioner, 118 F.2d 308 (5th Cir. 1941), revg. 40

---

[6]As previously noted, respondent conceded at trial that Mr. Rhodes was not liable for the sec. 6663(a) penalty for the 2 years at issue.

[7]Sec. 6663 provides:

SEC. 6663. IMPOSITION OF FRAUD PENALTY

(a) Imposition of Penalty.--If any part of any underpayment of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud.

(b) Determination of Portion Attributable to Fraud.--If the Secretary establishes that any portion of an underpayment is attributable to fraud, the entire underpayment shall be treated as attributable to fraud, except with respect to any portion of the underpayment which the taxpayer establishes (by a preponderance of the evidence) is not attributable to fraud.

(c) Special Rule for Joint Returns.--In the case of a joint return, this section shall not apply with respect to a spouse unless some part of the underpayment is due to the fraud of such spouse.

B.T.A. 424 (1939); Wilson v. Commissioner, 76 T.C. 623, 634 (1981).  The Commissioner must show that the taxpayer intended to evade taxes by conduct calculated to conceal, mislead, or otherwise prevent the collection of taxes.  Stoltzfus v. United States, supra; Marcus v. Commissioner, 70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980).

Fraud is a question of fact that must be considered based on an examination of the entire record and the taxpayer's entire course of conduct.  Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).  Fraud is never presumed and must be established by independent evidence of fraudulent intent.  Petzoldt v. Commissioner, supra at 699; Recklitis v. Commissioner, supra at 910.  Fraud is never imputed or presumed, and courts will not sustain fraud on circumstances that at most create only suspicion.  Olinger v. Commissioner, 234 F.2d 823, 824 (5th Cir. 1956), affg. in part and revg. in part T.C. Memo. 1955-9; Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Green v. Commissioner, 66 T.C. 538, 550 (1976).  Mere suspicion does not prove fraud, and the fact that the Court does not find the taxpayer's testimony wholly credible is not sufficient to establish fraud.  Cirillo v. Commissioner, 314 F.2d 478, 482 (3d Cir. 1963), affg. in part and revg. in part T.C.

Memo. 1961-192; <u>Shaw v. Commissioner</u>, 27 T.C. 561, 569-570 (1956), affd. 252 F.2d 681 (6th Cir. 1958).

Although mere suspicion is not enough, fraud may be proven by circumstantial evidence, and reasonable inferences may be drawn from the facts because direct evidence is rarely available. <u>DiLeo v. Commissioner</u>, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); <u>Petzoldt v. Commissioner</u>, <u>supra</u> at 699; <u>Delvecchio v. Commissioner</u>, T.C. Memo. 2001-130, affd. 37 Fed. Appx. 979 (11th Cir. 2002).

Circumstantial evidence that may give rise to a finding of fraud includes:  (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) providing implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with taxing authorities; (7) filing false Forms W-4, Employee's Withholding Allowance Certificate; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; (11) attempting to conceal illegal activity; (12) engaging in a pattern of behavior that indicates an intent to mislead; and (13) filing false documents.  <u>Bradford v. Commissioner</u>, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 211 (1992); <u>Christians v. Commissioner</u>, T.C. Memo. 2003-130.  These "badges of fraud" are not exclusive.  <u>Niedringhaus v. Commissioner</u>, <u>supra</u> at 211;

Miller v. Commissioner, 94 T.C. 316, 334 (1990). Additionally, the taxpayer's background may be examined to establish fraud. Spies v. United States, 317 U.S. 492, 497 (1943); Niedringhaus v. Commissioner; supra at 211; Walters v. Commissioner, T.C. Memo. 1995-543.

A consistent pattern of understating income may be strong evidence of fraud. Delvecchio v. Commissioner, supra (citing Holland v. United States, 348 U.S. 121, 137 (1954)); Camien v. Commissioner, 420 F.2d 283, 287 (8th Cir. 1970), affg. T.C. Memo. 1968-12; Williams v. Commissioner, T.C. Memo. 1992-153 ("petitioner has consistently and substantially understated his income, a fact that even, 'standing alone, is persuasive evidence of fraudulent intent to evade taxes.'" (quoting Estate of Beck v. Commissioner, 56 T.C. 297, 364 (1971))), affd. 999 F.2d 760 (4th Cir. 1993). It has been held that discrepancies of 100 percent or more between the correct net income and the reported net income for 3 successive years provide strong evidence of fraudulent intent. Hargis v. Godwin, 221 F.2d 486, 490 (8th Cir. 1955); Rogers v. Commissioner, 111 F.2d 987, 989 (6th Cir. 1940); Adams v. Commissioner, T.C. Memo. 1979-305. Moreover, fraudulent understatement of income may be established by overstatement of Schedule C expenses. Drobny v. Commissioner, 86 T.C. 1326, 1349 (1986), affd. 113 F.3d 670 (7th Cir. 1997); Clark v. Commissioner, T.C. Memo. 1991-313.

Because the Court concludes that Ms. Rhodes did not purchase items wholesale from Frank's, or anyone claiming to be associated with Frank's, it follows that Ms. Rhodes manufactured fake purchase orders solely to inflate her Schedule C expenses for Keepsake. In addition, Ms. Rhodes went to great lengths to increase her expenses by fabricating trips for both Amway and Keepsake to purchase supplies, give estimates, make deliveries, and "prospect", even going as far as to write places and mileage on a monthly calendar. She then claimed deductions for car and truck expenses for both Amway and Keepsake. Ms. Rhodes's gross overstatement of her Schedule C expenses establishes fraud. Drobny v. Commissioner, supra at 1349; Clark v. Commissioner, supra. Furthermore, the Court has held that keeping inadequate records, providing implausible or inconsistent explanations of behavior, dealing in cash, engaging in a pattern of behavior that indicates an intent to mislead, and failing to cooperate with tax authorities provides circumstantial evidence that may give rise to a finding of fraud. Bradford v. Commissioner, supra; Christians v. Commissioner, supra; Niedringhaus v. Commissioner, supra. Respondent showed at trial that Ms. Rhodes did each of these. She fabricated records that were inconsistent with her claimed deductions. When asked at trial to substantiate the claimed expenses and deductions, Ms. Rhodes's explanations were vague and highly implausible. She claimed to have dealt with

Chloe and her customers solely in cash, but there were no large cash withdrawals from her bank account, and the only deposits came from Mr. Rhodes's paycheck. She gave one explanation of her buying relationship with Chloe to the examiner but a completely different account at trial. The evidence satisfies the Court that there was no individual by the name of Chloe, and no other individual sold Ms. Rhodes supplies for Keepsake. In addition, Ms. Rhodes's documentation supporting her expense deductions was fabricated solely to increase her Schedule C deductions and create net operating losses for both Keepsake and Amway.

Respondent determined that Ms. Rhodes's actions constituted fraud, and the Court sustains that determination. Therefore, Ms. Rhodes is liable for the section 6663(a) penalties for tax years 1994 and 1995.[8]

Reviewed and adopted as the report of the Small Tax Case Division.

> Decision will be entered
> for respondent, except as to the
> section 6663(a) penalty against
> petitioner Michael Rhodes.

---

[8]Ms. Rhodes presented evidence that the criminal division of the IRS investigated her and declined to prosecute for criminal fraud. This fact, while considered, is not dispositive as the Court considered the entire record and Ms. Rhodes's entire course of conduct in its determination. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Recklitis v. Commissioner, 91 T.C. 874, 910 (1988); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983).